UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Drexel University,<br><br>    *Plaintiff,*<br><br>v.<br><br>United Educators Insurance,<br><br>    *Defendant.* | No. |

## COMPLAINT

Plaintiff, Drexel University ("Drexel"), by and through its undersigned counsel, hereby brings this civil action against Defendant United Educators ("UE"), and in support hereof, avers as follows:

## I. INTRODUCTION

This lawsuit arises from the failure of an insurance company to meet its contractual obligations to its insured. That insured, Drexel, has been sued by numerous plaintiffs for injuries they allege they suffered as a result of acts of sexual abuse committed by a physician formerly in Drexel's employ. Drexel has purchased commercial general liability insurance coverage from UE since 1990, and the relevant liability policies at issue which Drexel purchased from UE clearly require that UE defend and indemnify Drexel for the claims made against it; nonetheless, UE has steadfastly refused to defend Drexel on the basis of a policy exclusion for "professional services." UE's coverage position ignores applicable jurisprudence that without exception holds that sexual abuse, even when committed by a physician, is not a professional service for which he has professional training and skill. Nor are negligent hiring, training and supervision, of which Drexel is accused, professional services. Moreover, the position advanced by UE would

result in the absence of any liability coverage for medical professionals, even when the claim has nothing to do with their performance of a professional service, which is wholly inconsistent with the coverage that the policies issued by UE are supposed to provide. As a result, UE's refusal to honor its obligations to Drexel makes clear that the coverage for acts of sexual abuse and molestation that Drexel purchased from UE was, regrettably, illusory. Finally, UE has repeatedly failed to convey a clear and unambiguous coverage position to Drexel. UE's wrongful conduct has been in conscious and knowing disregard of the interests of its insured, Drexel.

## II. PARTIES

1. Plaintiff, Drexel, is a non-profit educational institution with its principal place of business at 3141 Chestnut Street, Philadelphia, Pennsylvania.

2. Defendant, UE, is a reciprocal risk retention group that provides liability insurance coverage for colleges and universities. UE has its principal place of business at 7700 Wisconsin Ave., Suite 500, Bethesda, Maryland.

## III. JURISDICTION AND VENUE

3. This Court has jurisdiction over Drexel's claim pursuant to diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is over $75,000 and the lawsuit involves citizens of different states.

4. This action is also brought pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

5. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims set forth herein took place in this District.

6. The Court has personal jurisdiction over UE in that it regularly conducts business in this District.

## IV. FACTUAL BACKGROUND

7. Drexel provides health care and treatment to patients through its employed physicians who are faculty in Drexel's College of Medicine.

8. Dr. Ricardo Alberto Cruciani ("Cruciani"), who at the time was licensed as a physician specializing in neurology and pain management, was hired by Drexel as the Chairman of the College of Medicine's Department of Neurology and Director of its Center for Comprehensive Pain Management & Palliative Care on or about February 1, 2016. Dr. Cruciani specialized in the care and treatment of patients with chronic pain.

9. In February 2017, after receiving complaints regarding Cruciani's conduct, Drexel conducted an internal investigation and determined that Cruciani was guilty of improper sexual conduct with respect to five of his patients.

10. Drexel moved quickly to dismiss Cruciani in March 2017. Drexel also notified the relevant state physician licensing agencies in Pennsylvania, New Jersey and New York of its findings and assisted the patients who had come forward in the process of filing complaints with law enforcement.

11. Cruciani was criminally charged with indecent assault, simple assault and sexual harassment by unwanted physical conduct.

12. On November 21, 2017, Cruciani pleaded guilty in Philadelphia Municipal Court to three counts of indecent assault and four counts of harassment by unwanted physical conduct, involving seven female patients that he treated as a Drexel physician in 2016.

13. On or about December 17, 2018, seventeen women filed suits against Drexel and other institutions in the Philadelphia Court of Common Pleas, in which they alleged that Cruciani, while employed by Drexel, committed sexual assaults, sexual misconduct and/or engaged in sexually harassing behavior with female patients, including the plaintiffs (the "Cruciani Claims").

14. On or about June 19, 2019, the plaintiffs in the Cruciani Claims filed Second Amended Complaints (the "Second Amended Complaints"), which are the currently operative complaints.

15. The Second Amended Complaints are substantially similar in all material respects. A copy of one of the Second Amended Complaints is attached hereto as Exhibit A.

16. The Second Amended Complaints allege that Cruciani engaged in sexual misconduct toward the plaintiffs. *See, e.g.,* Ex. A at ¶ 40.

17. The Second Amended Complaints also allege that, in addition to his sexually abusive conduct, Cruciani also allegedly overprescribed and mis-prescribed pain medications for female patients, including the plaintiffs. *Id.* at ¶ 45.

18. The Second Amended Complaints further allege that as a result of Cruciani's misconduct, the plaintiffs suffered permanent mental, emotional and physical injuries. *Id.* at ¶ 41.

19. With respect to Drexel, the Second Amended Complaints allege that Drexel knew or should have known of the reports and complaints of patients who were sexually assaulted and harassed by Cruciani. *Id.* at ¶¶ 43-44.

20. The Second Amended Complaints further allege, *inter alia,* that Drexel was negligent, grossly negligent, reckless, and acted willfully, wantonly and/or intentionally:

> (a) in not properly and/or timely communicating with, contacting, inquiring, requesting information and/or requesting documentation from Cruciani's prior employers;
>
> (b) in the improper vetting, screening, hiring, supervision and/or retention of Cruciani;
>
> (c) in not properly and/or timely investigating reports and complaints of sexual assaults, sexual misconduct and/or sexually harassing behavior of Cruciani;
>
> (d) in continuing to retain Cruciani;
>
> (e) in not properly and/or timely reporting the misconduct of Cruciani to the proper authorities;
>
> (f) in keeping the behavior of Cruciani concealed and secret from patients, the public and the authorities; and
>
> (g) in the mis-prescribing and/or overprescribing of medications for female patients, including plaintiffs.

*Id.* at ¶ 66.

## V. UNITED EDUCATORS' POLICIES AND COVERAGE DENIAL

21. UE issued commercial general liability ("CGL") primary and excess policies to Drexel with an effective period of 7/1/15 to 7/1/16 (the "15-16 Policies"). UE also issued CGL primary and excess policies to Drexel with an effective period of 7/1/16 to 7/1/17 (the "16-17 Policies"). The 15-16 and 16-17 Policies are identical in all material respects and will be collectively referred to herein as the "Policies." Copies of the 15-16 UE Policies are attached hereto as Exhibits B (primary) and C (excess). Copies of the 16-17 UE Policies are attached hereto as Exhibits D (primary) and E (excess).

22. The limits of liability under the primary Policies are $1 million per occurrence and $3 million aggregate, with a deductible of $150,000 per occurrence and $450,000 aggregate.

23. The limits of liability under the excess Policies are $40 million per occurrence and $40 million aggregate, both of which are expressly applicable to sexual molestation.

24. Drexel University College of Medicine is an included entity under Schedule A of the Policies.

25. Interpretation of the Policies is governed by New York law.

26. The Policies require UE to defend and indemnify Drexel with respect to covered claims, as follows:

> We will pay on behalf of the Insureds all Damages up to the Limit of Liability resulting from an Occurrence anywhere to which this Insurance applies.

27. An "occurrence" is defined by the Policies in pertinent part as follows:

> [A]n accident during the Policy Period or the continuous, intermittent or repeated exposure to conditions that commence during the Policy Period that causes Bodily Injury or Property Damage neither expected or intended by the Insured; . . .

28. "Bodily Injury" is defined by the Policies as "physical injury, sickness, death, or emotional distress sustained by a person and includes mental injury and shock."

29. The Second Amended Complaints allege bodily injury as defined by the Policies.

30. Cruciani's sexual misconduct was neither expected nor intended by Drexel.

31. The term "occurrence" in the Policies is further expressly defined to include sexual abuse or molestation, as follows:

> [A]ny incidents related to or connected to or arising out of Sexual Molestation, sexual or physical assault, or abuse, irrespective of the number of incidents or injuries or the time period or area over which incidents or injuries occur, shall be treated as a [sic] one occurrence for each perpetrator.

32. Under the terms of the Policies, the Cruciani Claims constitute claims arising from an occurrence giving rise to bodily injury caused by sexual abuse.

33. Accordingly, the Cruciani Claims triggered the Policies and UE is required under the Policies to provide a defense to Drexel and to indemnify Drexel with respect to the Cruciani Claims.

34. UE has refused to provide a defense to Drexel for the Cruciani Claims on the basis of exclusion (f) in the primary Policies, which excludes coverage for "any liability arising out of rendering or failure to render any Professional Services."

35. UE also has refused to provide a defense to Drexel for the Cruciani Claims on the basis of exclusion (e) of the excess Policies excludes coverage for "liability arising out of the performance or failure to perform any Medical Services."

36. Specifically, on February 9, 2018, UE acknowledged receipt of a complaint filed in New Jersey and writs of summons filed in Philadelphia. UE advised Drexel that "the professional and medical services exclusions in the policies should preclude coverage for these claims that arise out of Cruciani's medical treatment of the claimants." A copy of UE's February 9, 2018 letter is attached hereto as Exhibit F.

37. In a letter dated October 3, 2018, in response to Drexel tendering seventeen Cruciani Claim complaints for coverage, UE told Drexel that "it appears extremely unlikely" that any UE policy provided coverage for the Cruciani Claims. That letter further stated that "based on the information we have before us, the CGL Policy's professional services exclusion (medical services excluded) and the GLX Policy's medical services exclusion endorsement appear to bar any coverage for Drexel in these matters." A copy of UE's October 3, 2018 letter is attached hereto as Exhibit G.

38. In both of those letters, UE purported to reserve all of its rights while at the same time insisting upon the applicability of those exclusions.

39. In a March 15, 2019, letter, UE closed the door on further coverage discussion by stating unequivocally that "[w]ith respect to the 18 complaints filed against Dr. Cruciani and Drexel, please be advised that UE has responded to [Drexel] on [its] request for coverage on those matters." A copy of UE's March 15, 2019 letter is attached hereto as Exhibit H.

40. The only reasonable reading of UE's correspondence to Drexel is that UE has denied coverage for the Cruciani Claims. The fact that UE has not used the word "denial" does not negate the impact of UE's position that the professional and medical services exclusions bar coverage for the Cruciani Claims, i.e., insofar as UE is not defending Drexel with respect to the Cruciani Claims, its position is a *de facto* denial.

41. In addition, not only has UE failed to provide a defense of the Cruciani Claims to Drexel, UE has failed to provide a clear and unequivocal coverage position to Drexel more than a year after Drexel put UE on notice of the Cruciani Claims.

42. Contrary to UE's contention, acts of sexual abuse do not constitute professional and/or medical services even when they are committed by a licensed physician.

43. "Professional Services" are defined by the CGL Policy as "acts that may be legally performed only by a person holding a professional license, regardless of whether the person is licensed or not."

44. "Medical Services" are defined by the excess Policies as "any acts that may be legally performed only by a physician, regardless of whether the person is licensed or not."

45. Acts of sexual abuse are not acts that may be performed only by a licensed physician or other professionally-licensed person.

46. The Cruciani Claims substantially arise from Cruciani's sexual abuse of patients, not from his provision of professional or medical services.

47. The negligence of which Drexel is accused in the Second Amended Complaints does not constitute the provision of professional and/or medical services.

48. Accordingly, the allegations of negligence against Drexel in the Cruciani Claims are outside of the scope of the Professional Services and Medical Services exclusions in the Policies.

49. As a result of UE's failure to defend Drexel against the Cruciani Claims, Drexel retained counsel to defend it in the lawsuit and the defense costs relating to those claims are presently being paid solely by Drexel.

50. UE's conduct as averred in this Complaint constitutes conscious and knowing indifference to the rights of Drexel, its insured.

**COUNT I – DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

51. Drexel incorporates the averments of Paragraph 1 through 50 of this Complaint as though set forth fully.

52. The Cruciani Claims are covered claims within the meaning of the coverage provisions of the Policies.

53. The allegations in the Second Amended Complaints do not allege damages arising from the provision of Professional Services within the meaning of the primary Policies or Medical Services within the meaning of the excess Policies.

54. Accordingly, the Cruciani Claims are not excluded by the Policies' Professional Services and/or Medical Services exclusions.

55. UE's refusal to defend Drexel with regard to the Cruciani Claims constitutes a breach of the contract of insurance embodied in the Policies.

56. UE's unreasonable refusal to defend Drexel and its refusal to communicate a clear and unambiguous coverage position to Drexel regarding the Cruciani Claims constitutes a breach of the implied covenant of good faith and fair dealing inherent in the Policies.

57. UE's conduct as averred herein constitutes conscious and knowing indifference to the rights of Drexel, its insured.

WHEREFORE, Drexel requests that the Court enter judgment in its favor and against Defendant UE and enter an order declaring that: (i) the Cruciani Claims fall within the scope of coverage provided by the Policies; (ii) UE owes Drexel a defense of the Cruciani Claims; (iii) UE is obligated to indemnify Drexel for any judgment or settlement of the Cruciani Claims to the extent they arise from sexual abuse or molestation, up to the applicable policy limits; and (iv) UE has breached the implied covenant of good faith and fair dealing present in the Policies by unreasonably refusing to defend Drexel and by failing to communicate to Drexel a clear and unambiguous coverage position.

## COUNT II – BREACH OF CONTRACT

58. Drexel incorporates the averments of Paragraph 1 through 57 of this Complaint as though set forth fully.

59. The Cruciani Claims are covered claims within the meaning of the coverage provisions of the Policies.

60. The allegations in the Second Amended Complaints do not allege damages arising from the provision of Professional Services within the meaning of the primary Policies or Medical Services within the meaning of the excess Policies.

61. Accordingly, the Cruciani Claims are not excluded by the Policies' professional services and medical services exclusions.

62. UE's refusal to defend or to indemnify Drexel against the Cruciani Claims constitutes a breach of the Policies.

63. Drexel has complied with all of its duties and obligations under the Policies.

64. As a result of UE's breach of contract, Drexel has incurred damages in excess of $75,000.00, including the cost of defense of the Cruciani Claims.

WHEREFORE, Plaintiff Drexel University requests that the Court enter judgment in its favor and against Defendant UE requiring UE to (i) defend Drexel against the Cruciani Claims; (ii) indemnify Drexel for any judgment or settlement of the Cruciani Claims to the extent they arise from sexual abuse or molestation, up to the applicable policy limits; and (iii) pay Drexel for all other damages incurred by Drexel as a consequence of UE's breach in an amount to be determined at trial in excess of $75,000.00, together with attorneys' fees, interest, and any other relief this court deems just.

## COUNT III – BREACH OF CONTRACT – IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

65. Drexel incorporates the averments of Paragraph 1 through 64 of this Complaint as though set forth fully.

66. Every contract, including every policy of insurance, contains an implied covenant of good faith and fair dealing.

67. UE has breached the implied covenant of good faith and fair dealing inherent in the Policies by asserting without reasonable basis that the Cruciani Claims are excluded by the Policies and by refusing to defend Drexel against the Cruciani Claims..

68. UE's unreasonable refusal to provide coverage to Drexel for the Cruciani Claims demonstrates UE's knowledge of, or reckless disregard for, UE's lack of a reasonable basis for denying coverage for the Drexel Claim.

69. UE also has breached the implied covenant of good faith and fair dealing inherent in the Policies by refusing and failing to provide a clean and unambiguous coverage position to Drexel for an unreasonable length of time.

70. UE's wrongful acts and omissions as alleged herein demonstrate UE's conscious and knowing indifference to the rights of Drexel, its insured.

71. For the reasons set forth above, including asserting policy defenses without reasonable basis in fact or in law; unnecessarily and unreasonably compelling litigation; placing unduly restrictive and selective interpretations on policy exclusions; failing to clearly communicate a coverage position to Drexel within a reasonable time period; and unreasonably withholding policy benefits, UE has breached the implied covenant of good faith and fair dealing inherent in the Policies.

72. As a result of UE's breach of the implied covenant of good faith and fair dealing, Drexel has incurred damages in excess of $75,000.00, including the cost of defense of the Cruciani Claims.

WHEREFORE, Plaintiff Drexel University requests that the Court enter judgment in its favor and against Defendant UE requiring UE to (i) defend Drexel against the Cruciani Claims; (ii) indemnify Drexel for any judgment or settlement of the Cruciani Claims to the extent they arise from sexual abuse or molestation, up to the applicable policy limits; and (iii) pay Drexel for all other damages incurred by Drexel as a consequence of UE's breach in an amount to be determined at trial in excess of $75,000.00, together with attorneys' fees, interest, and any other relief this court deems just.

## COUNT IV -- INSURANCE BAD FAITH - 42 Pa. C.S. § 8371

73. Drexel incorporates the averments of Paragraph 1 through 72 of this Complaint as though set forth fully.

74. UE owes Drexel, as an insured located in the Commonwealth of Pennsylvania, a duty of good faith in its adoption of coverage positions and its handling of claims under the Policies.

75. UE lacks a reasonable basis for asserting that the Cruciani Claims are excluded from coverage under the Policies.

76. UE's unreasonable refusal to provide coverage to Drexel for the Cruciani Claims as alleged herein demonstrates UE's knowledge of, or reckless disregard for, its lack of a reasonable basis for denying coverage for the Drexel Claim.

77. Additionally, UE's conduct in not providing a clear and unambiguous coverage position to Drexel while failing to defend Drexel against the Cruciani Claims is unreasonable and in knowing or reckless disregard of Drexel's interests.

78. For the reasons set forth above, including asserting policy defenses without reasonable basis in fact or in law; unnecessarily and unreasonably compelling litigation; placing unduly restrictive and selective interpretations on policy exclusions; failing to clearly communicate a coverage position to Drexel within a reasonable time period; and unreasonably withholding policy benefits, UE has engaged in bad faith in violation of 42 Pa. C.S.A. §8371, for which UE is liable for interest on the Cruciani Claims, court costs, attorneys' fees, punitive damages and such other compensatory and/or consequential damages allowed by law.

**WHEREFORE,** Plaintiff Drexel respectfully requests that the Court grant judgment in its favor and against Defendant UE, in an amount to be determined at trial in excess of $75,000.00, including all relief available under 42 Pa. C.S. § 8371, including but not limited to statutory interest, punitive damages and attorneys' fees and court costs.

Dated: July 1, 2019

**KLEINBARD LLC**
Steven J. Engelmyer (No. 42840)
Eric J. Schreiner (No. 76721)
Paul G. Gagne (No. 42009)
Three Logan Square, 5th Floor
Philadelphia, PA 19103
(215)568-2000
sengelmyer@kleinbard.com
eschreiner@kleinbard.com
pgagne@kleinbard.com

*Attorneys for Plaintiff Drexel University*